**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Luke Adams, an individual, | No. CV-18-0378-TUC-JGZ (LAB) |
| Plaintiff, | **ORDER** |
| vs. | |
| Symetra Life Insurance Company, an Iowa corporation, | |
| Defendant. | |

Pending before the court is the defendant's motion, filed on December 9, 2019, to compel discovery. (Doc. 137) The plaintiff filed a response on December 23, 2019. (Doc. 158) The defendant filed a reply on January 10, 2020. (Doc. 174)

This matter was referred to Magistrate Judge Bowman pursuant to the Rules of Practice of this court. *See* LRCiv 72.1(c).

Discussion

The plaintiff, Robert Luke Adams, filed his complaint on August 3, 2018. (Doc. 1) He claims the defendant, Symetra Life insurance Company (Symetra), breached an insurance contract and breached the duty of good faith and fair dealing by failing to pay benefits due in accordance with his Long Term Disability Income Insurance Policy (Policy). *Id.*

Adams worked as "a self-employed insurance agent." (Doc. 1, p. 2) He maintains that he became disabled "no later than July 11, 2017" due to rheumatoid arthritis and low back pain. (Doc. 1, p. 3) Symetra paid benefits starting October 9, 2017, but stopped paying benefits after one year. (Doc. 1, p. 3) Adams understands that benefits stopped based on Symetra's assessment of the specific nature of his disabling condition. (Doc. 1, p. 3) According to Symetra, benefits were terminated because "after it acquired further information, it found that he was not disabled." (Doc. 137, p. 1) Adams claims that he "has suffered, is suffering and will continue to suffer significant emotional and mental distress and other injuries and damages." (Doc. 1, p. 5) He seeks damages for "physical suffering, emotional distress, humiliation, inconvenience, and anxiety. . . ." (Doc. 1, p. 9)

When Adams's health began to deteriorate, his wife, Monica Adams (Monica), quit her job as a clinical pharmacy trainer and opened an insurance brokerage business now called Invested Insurance Agency (IIA). (Doc. 137, p. 2) Adams acknowledged that he "has given consultation and advice to Monica . . . in the opening and operation of her business." (Doc. 137, p. 29)

Symetra believes that Adams took an active roll in helping Monica set up her business and acquire his old customers. Symetra argues that the extent of Adams's involvement in IIA is relevant because it bears on his ability to work. Moreover, Symetra argues that the IIA's financial success is relevant to the issue of damages.

Symetra subsequently issued to IIA a subpoena duces tecum seeking:

1. IIA's Operating Agreement.

2. All documents reflecting the names of IIA's customers.

3. All documents relating to any work that Adams has performed for IIA.

4. All documents relating to any compensation that Adams has received from IIA.

5. IIA's errors and omissions insurance policy, including all amendments, endorsements, certificates of insurance, and schedules of benefits.

6. IIA's owner's insurance policy, including all amendments, endorsement, certificates of insurance, and schedules of benefits.

7. All documents reflecting IIA's commissions and income streams.

1    8. IIA's federal business income tax returns, including all W-2 forms, W-9 forms, K-1 forms, 1099 forms, 1120 forms, and all schedules, statements, and attachments for calendar years 2013 to the present.

9. All documents and communications that IIA has received from Farm Bureau Financial Services or any of its affiliates.

10. All documents reflecting the names of any of Adams' Farm Bureau customers.

11. IIA's business plan.

12. All documents reflecting IIA's agreements or other arrangements with the insurance companies for which IIA sells insurance products.

13. The applications that IIA filled out to send to the companies for which it brokers insurance.

14. IIA's contracts with Agent Support Network of Arizona.

(Doc. 137, pp. 5-6) IIA filed a response to the subpoena on August 22, 2019. (Doc. 137, exhibit 2) IIA objected to all items except for item 4, for which IIA stated that it had no documents responsive to the request. *Id.* On December 9, 2019, Symetra filed the pending motion to compel pursuant to Fed.R.Civ.P. 45(d)(2)(B)(i) and 37(a)(2).

In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

"[T]he court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

If the subject of a subpoena duces tecum serves an objection, Rule 45(d)(2)(B)(i) authorizes "the serving party" to "move the court for the district where compliance is required

1 | for an order compelling production or inspection." Fed.R.Civ.P. Rule 37(a)(2) instructs that
2 | "an order to a nonparty must be made in the court where the discovery is or will be taken." Fed.
3 | R. Civ. P.

4 | Since the pending motion was filed, Adams has disclosed documents in response to Items
5 | 1-6, 8, 9, and 14. (Doc. 158, p. 7 ); (Doc. 158-1, pp. 24-30) Symetra objects to Adams's
6 | selective response to Item 2. Items 2, 7, and 10-13 remain in dispute. (Doc. 158, p. 7); (Doc.
7 | 174, pp. 6-8)

8 | According to Symetra, Items 2 and 10 will allow it "to examine how much of Adams's
9 | Farm Bureau business migrated to IIA." (Doc. 137, p. 7) Symetra suggests that these
10 | documents "are relevant to the issue of whether Plaintiff has worked for IIA in some capacity,"
11 | but it does not explain its thinking. It is possible that Adams may have encouraged some of his
12 | old customers to transfer their business to Monica, but simply encouraging them to do so in a
13 | phone call or email is not particularly probative evidence that he is able to work. Symetra
14 | already has access to IIA's financial statements. *See* (Doc. 109, p. 4); (Doc. 135) Moreover,
15 | Symetra has Adams's bank statements, his W-2s and 1099s. (Doc. 160, pp. 5-7) If Adams is
16 | working for IIA, those statements will show it.

17 | Item 7 asks for "documents reflecting IIA's commissions and income streams." Symetra
18 | argues these documents are relevant because they reflect the financial condition of IIA, which
19 | is part of Adams's community property. But as the court explained above, Symetra already has
20 | access to IIA's financial statements, check registers, and documents relating to deposits or
21 | disbursements. (Doc. 158, p. 9); (Doc. 135) This item appears to be cumulative.

22 | Items 11-13 are corporate documents that describe IIA's business plan and the
23 | arrangements that it has with the insurance companies whose insurance it sells. Symetra argues
24 | that "[i]f Adams is involved with IIA he may be listed as an insured in IIA's errors and
25 | omissions or business owner's policy, in its agreements or applications to the companies for
26 | which IIA brokers insurance in its contract with Agent Support Network of Arizona, or in IIA's
27 | business plan." (Doc. 137, p. 8) Since the pending motion was filed, IIA has disclosed most
28 | of these documents. Symetra has IIA's operating agreement, its errors and omissions insurance

policy, its owner's insurance policy, and its contracts with Agent Support Network of Arizona. (Doc. 158, pp. 4-6) Symetra provides no evidence that the, as yet, undisclosed documents would add anything significant.

IT IS ORDERED that the defendant's motion, filed on December 9, 2019, to compel discovery is DENIED. (Doc. 137)

DATED this 13th day of February, 2020.

_Leslie A. Bowman_
Leslie A. Bowman
United States Magistrate Judge