**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Robert Luke Adams, an individual, | ) | No. CV-18-0378-TUC-JGZ (LAB) |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | |
| Symetra Life Insurance Company, an Iowa corporation, | ) | |
| Defendant. | ) | |

Pending before the court is the plaintiff's motion, filed on December 13, 2019, to compel discovery from third-party MLS Group.  (Doc. 179)  MLS Group filed a response on January 17, 2020.  (Doc. 184)  The plaintiff filed a reply on January 24, 2020.  (Doc. 193)

This matter was referred to Magistrate Judge Bowman pursuant to the Rules of Practice of this court.  *See* LRCiv 72.1(c).

The motion will be granted.

Discussion

The plaintiff, Robert Luke Adams, claims the defendant, Symetra Life insurance Company (Symetra), breached an insurance contract and breached the duty of good faith and fair dealing by failing to pay benefits due in accordance with his Long Term Disability Income Insurance Policy (Policy).  (Doc. 1)  Adams worked as "a self-employed insurance agent."

(Doc. 1, p. 2)  He maintains that he became disabled "no later than July 11, 2017" due to rheumatoid arthritis and low back pain.  (Doc. 1, p. 3)  Symetra paid benefits starting October 9, 2017, but stopped paying benefits after one year.  (Doc. 1, p. 3)  Adams believes Symetra is relying on a term in the Policy that limits benefits if disability arises out of a "special condition" – a "[m]usculoskeletal and connective tissue disorder[] of the neck and back."  (Doc. 1, p. 3)

When Adams first applied for benefits, Symetra hired MLS to review the medical record and assess his claim.  (Doc. 179, p. 7)  MLS doctors Frank Polanco and Vikram Garg reviewed the medical record and offered their opinions of Adams's ability to work.  (Doc. 179, p. 10)  Polanco reported that "[Adams] retains a full-time capacity [to work] as previously noted."  (Doc. 179, p. 10)  He further opined that the medical records "do not support any restrictions or limitations which are secondary to medication usage."  *Id*.  Garg reported that "Symetra's surveillance of [Adams] revealed inconsistencies in [his] or his treating physicians' claimed physical limitations . . . ."  (Doc. 179, p. 11)  He opined that "there are no restrictions supported for [Adams's] rheumatoid arthritis."  *Id*.  Symetra's ultimate denial of benefits was based primarily on the reports authored by Polanco and Garg.  (Doc. 179, pp. 11-12)  Adams suspects that the MLS doctors offered medical opinions that were less than completely objective.

On February 25, 2019, Adams served MLS with a subpoena for records relating to its analysis of Adams's medical impairments.  (Doc. 179, pp. 12-13)  MLS complied to some extent, but it denied discovery of two specific categories of documents.  *Id*.  They are: "1) [a]ll notes relating to Robert Luke Adams, including but not limited to, all notes from interview, rough drafts, and telephone conversations relating to Robert Luke Adams and 2) prior reports authored by Drs. Garg and Polanco on behalf of MLS between January 1, 2015 to the present," which number approximately 160 reports.  (Doc. 179, p. 13)  Adams filed the pending motion to compel on December 13, 2019.  (Doc. 179)

In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery

in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

"[T]he court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

Symetra's decision regarding Adams's benefits under the Policy was based on the MLS doctors' reports. These reports were crafted from notes, correspondence, and drafts that the doctors stored in the MLS "portal." Access to those documents would provide a window into the doctors' thought processes and the rationale behind their ultimate conclusions. They might, for example, show that the doctors' opinions were unfairly influenced by the insurance company that hired MLS in the first place. *See, e.g., Hinds v. Life Insurance Company of North America*, 2019 WL 4871471, *7 (C.D.Cal. 2019) ("[T]he back and forth between Dr. Polanco and [the insurance company] discussed above is very troubling as it suggests that Dr. Polanco was only interested in giving [the insurance company] the opinion it wanted rather than an opinion based on his unbiased review of the objective medical evidence."). And the use of biased doctors is some evidence of bad faith. The doctors' notes, correspondence, and drafts are relevant and discoverable.

Adams also seeks access to other reports that were authored by the doctors Polanco and Garg. These other reports could show that the doctors routinely produce reports favorable to the disability insurance company. If so, these other reports would be evidence of unfair bias against disability claimants. *See, e.g., Hangarter v. Provident Life & Acc. Ins. Co.*, 373 F.3d 998, 1011 (9th Cir. 2004) ("[E]vidence showed that in thirteen out of thirteen cases involving claims for total disability, Dr. Swartz rejected the insured's claim that he or she was totally disabled."); *Hertz v. Hartford Life & Acc. Ins. Co.*, 991 F. Supp. 2d 1121, 1136 (D. Nev. 2014) ("The Court finds these statistics strongly suggest that both MLS and Dr. Rim harbored a

significant bias towards finding a claimant capable of performing some type of work."). The knowing use of biased doctors would be some evidence of bad faith. Accordingly, the doctors' other reports are relevant and discoverable.

MLS argues that discovery should be denied. First, it argues that the motion to compel is untimely, coming "on the last day of discovery, *more than nine months* after MLS first responded to his February 25, 2019 Subpoena." (Doc. 184, p. 4) MLS concedes that the parties engaged in discussions in an attempt to resolve the issues that lasted approximately five months. *Id.* Nevertheless it maintains that the motion was filed four months after those discussions ended. *Id.*

The court finds that while there might have been unnecessary delay, there is no showing that this delay resulted in any prejudice. Accordingly the motion will not be denied due to delay. See Fed.R.Civ.P. 1.

MLS further argues that the motion should be denied because an expert's draft reports are protected from discovery by Fed.R.Civ.P. 26(b)(4)(B),(C). These Rules, however, are inapposite. They are designed to protect the drafts of reports prepared in anticipation of litigation because those drafts would be work product. Fed.R.Civ.P. 26(b)(4)(B),(C) (citing Fed.R.Civ.P. 26(b)(3)(A) and (B)). The draft reports at issue here were not prepared in anticipation of litigation. They were prepared to help Symetra evaluate Adams's original claim for benefits.

MLS further argues that discovery should not be allowed because a "person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost." (Doc. 184, p. 9) (citing Fed.R.Civ.P. 45(e)(1)(D)) Apparently, MLS recently switched from one database program to another, and the requested notes are "housed in MLS's former database and thus would require MLS to manually copy and paste the notes into a word processor for production." (Doc. 184, p. 9) The court is not persuaded.

MLS asserts that compliance would require someone to "manually copy and paste the notes into a word processor for production." (Doc. 184, p. 9) It does not, however, specify

exactly how may documents there are or how much time it would take to produce them. Without more, the court finds that MLS fails to shoulder its burden to show that compliance would entail undue burden or cost. *See, e.g., Alabama Aircraft Indus., Inc. v. Boeing Co.*, 2016 WL 9781825, at *5 (N.D. Ala. 2016) ("[C]ourts addressing the issue emphasize the need for specificity in a non-party's showing of 'undue burden.'"). Moreover, it appears that this problem is one of MLS's own making. MLS apparently decided to "update" its data system without providing for a means to easily access the notes previously stored by the old system. (Doc. 179, p. 14, n.5) The target of a subpoena duces tecum cannot excuse non-compliance by pointing to a self-created burden. *See, e.g., Lou v. Ma Labs, Inc.*, 2013 WL 12328278, at *2 (N.D. Cal. 2013) ("The Court finds that the burden defendants claim excuses them from producing such documents is of their own making, and thus not compelling."), *clarified on denial of reconsideration*, 2013 WL 1615785 (N.D. Cal. 2013). In the alternative, the court finds that Adams has shown good cause for the discovery "considering the limitations of Rule 26(b)(2)(C)." Fed.R.Civ.P. 45(e)(1)(D). Discovery is therefore proper in spite of the burden it may cause to MLS.

IT IS ORDERED that the plaintiff's motion, filed on December 13, 2019, to compel discovery from third-party MLS Group is GRANTED. (Doc. 179) MLS Group will produce within thirty days from the date this order is issued "1) [a]ll notes relating to Robert Luke Adams, including but not limited to, all notes from interview, rough drafts, and telephone conversations relating to Robert Luke Adams and 2) prior reports authored by Drs. Garg and Polanco on behalf of MLS between January 1, 2015 to the present." (Doc. 179, p. 13)

DATED this 16th day of March, 2020.

Leslie A. Bowman

Leslie A. Bowman
United States Magistrate Judge

- 5 -