**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Robert Luke Adams, an individual, ) No. CV-18-0378-TUC-JGZ (LAB)
)
    Plaintiff, ) **ORDER**
)
vs. )
)
Symetra Life Insurance Company, an Iowa )
corporation, )
)
    Defendant. )
)

Pending before the court is the plaintiff's motion, filed on December 13, 2019, to compel discovery from the defendant, Symetra. (Doc. 150) Symetra filed a response on January 10, 2020. (Doc. 175) The plaintiff filed a reply on January 18, 2020. (Doc. 186)

This matter was referred to Magistrate Judge Bowman pursuant to the Rules of Practice of this court. *See* LRCiv 72.1(c).

The motion will be granted in part.

Discussion

The plaintiff, Robert Luke Adams, claims the defendant, Symetra Life insurance Company (Symetra), breached an insurance contract and breached the duty of good faith and fair dealing by failing to pay benefits due in accordance with his Long Term Disability Income Insurance Policy (Policy). (Doc. 1) Adams worked as "a self-employed insurance agent."

(Doc. 1, p. 2) He maintains that he became disabled "no later than July 11, 2017" due to rheumatoid arthritis and low back pain. (Doc. 1, p. 3) Symetra paid benefits starting October 9, 2017, but stopped paying benefits after one year. (Doc. 1, p. 3) Adams believes Symetra stopped paying because of a term in the Policy that limits benefits if disability arises out of a "special condition" – a "[m]usculoskeletal and connective tissue disorder[] of the neck and back." (Doc. 1, p. 3)

In the pending motion, Adams moves, pursuant to Fed.R.Civ.P. 37(a)(3)(B), that the court compel Symetra to comply with his requests for production (RFPs) 1-6, 10-11, and 13-21. (Doc. 150, p. 1)

In general, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

"[T]he court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

Pursuant to Fed. R. Civ. P. 37(a)(3)(B)(iv), "A party seeking discovery may move for an order compelling . . . production . . . if . . . a party fails to produce documents."

### Requests for Production (RFPs) 1-6, 10, Adams's Policy and His Claim

In RFPs 1-2, Adams requests production of "[a]ll files pertaining to claims made on [his] policy" and those documents that refer to "his policy, or his claim" including "underwriting and administrative documents." (Doc. 150, p. 5) These documents relate directly to Adams's claim

for benefits under the Policy and Symetra's processing of his claim. They are material and discoverable.

The problem with these RFPs seems to lie in fact that Adams does not have an individual policy. He is covered under a group policy issued to The Agents Association, of which he is a member. Other members of that Association, however, are also covered by that Group Policy. Some of them have even filed claims under that Policy. Symetra notes that a claim for benefits by another insurance agent on this same Group Policy would technically be a "document pertaining to" Adams's "policy." (Doc. 175, p. 6) Symetra asserts correctly that such a document would not be relevant to this action and would not be discoverable. (Doc. 175, p. 7) Such a document would have nothing to do with Adams's claim for benefits or Symetra's evaluation of his claim.

On the other hand, there may be documents that relate to Adams's claim that also relate to other claims under the same Group Policy. Adams suggests a hypothetical "document or communication identifying [his] claim and others as belonging in a category of claims that were to receive an additional level of review due to the high potential dollar value of the claim." (Doc. 150, p. 8) Alternatively, he imagines a document commenting on special claims handling procedures that should be used when evaluating "expensive and noncancellable 'own occupation' disability policies." *Id*., at 9 These documents would relate to Adams's claim and the evaluation of his claim. They would be material and discoverable. The fact that they may also relate to claims filed by others under the same Group Policy does not disqualify them from discovery.

Contrary to Symetra's arguments, the underwriting file and administrative documents for the Policy are discoverable even though they would apply to other insureds covered under that same Policy. Adams explains that these documents "reflect[] Symetra's underwriting and reserves, [and] benefit/loss ratio expectations, under the Policy . . . ." (Doc. 150, p. 12) They therefore reflect Symetra's financial expectations for the Policy. They may explain why the Policy is structured in the way that it is and may shed light on Symetra's evaluation of claims under the Policy. Symetra argues that the underwriting file is "voluminous" and its production

would be "unduly burdensome." (Doc. 175, p. 7) It does not, however, provide any specifics from which the court could judge its objection.

Symetra explains that some of the administrative documents "are automatically generated from information contained in the claim files." (Doc. 175, p. 8) These documents contain no additional information beyond what has already been produced. Accordingly, these administrative documents are cumulative and need not be produced. Symetra further asserts that "certain documents referenced in archived policies . . . were not in effect at the time of Plaintiff's claim." (Doc. 175, p. 1) Accordingly, these documents are not relevant and need not be produced.

In RFPs 3 and 6, Adams requests production of documents "that evaluate the job performance . . . for all employees involved in [his] claim" and "[a]ll manual(s) . . . or other instructional material(s) that were in effect. . . concerning handling of long-term disability claims" including "claims limited by the Special Condition provisions of the Policy." (Doc. 150, pp. 5-6) These documents relate to Symetra's claims handling procedures and culture. They relate to Adams's claim that Symetra acted in bad faith. They are material and discoverable. *See, e.g., Ingram v. Great Am. Ins. Co.*, 112 F. Supp. 3d 934, 940 (D. Ariz. 2015) ("The Court finds the potential probative value of the information contained in those records outweigh any privacy concern." "Evidence regarding whether Defendants set arbitrary goals for the reduction of claims paid and whether the salaries and bonuses paid to claims representatives were influenced by how much the representatives paid out on claims is relevant to whether Defendants acted unreasonably and knew it.") (punctuation modified). Documents that have been archived and were not in effect when Adams filed his claim are not relevant and need not be produced. *See* (Doc. 175, p. 11)

In RFPs, 4-5, Adams requests production of documents "reflecting targets, goals, objectives, quotas" and "scorecards, Appeal Logs, CEO emails, and Power Points" for the personnel involved in evaluating his claim. (Doc. 150, p. 5) These documents may show that Symetra was concerned about the financial impact Adams's claim and others like it had on Symetra's bottom line and developed a corporate culture that encouraged its employees to put

the company's interests over the interests of its insureds. They are material and discoverable.

Adams seeks documents concerning all employees with "direct . . . responsibility for handling . . . Plaintiff's Claim . . . ." (Doc. 150-3, pp. 9, 11) Symetra questions whether a "customer service representative who took one or more phone calls from the Plaintiff" would qualify. (Doc. 175, p. 10) Such a person would not qualify as a person with "direct responsibility" for Adams's claim.

In RFP 10, Adams requests production of "[d]ocuments reflecting other claims that have been terminated after 12 months pursuant to the Special Condition limitation." (Doc. 150, p. 6) He suspects these documents may reveal a pattern of claim denial which could be evidence of a corporate culture adverse to the interests of the insureds.

Symetra explains in its response, however, that it "did not apply this limitation to Plaintiff's claim." (Doc. 175, p. 12) "It was not the basis for the denial." *Id*. If that were true, RFP 10 would be entirely irrelevant. Unfortunately, Symetra does not support this statement with either an affidavit or a citation to the record. The court finds that the record on this issue is ambiguous. In his complaint, Adams stated that Symetra approved his benefits for only 12 months because his disability arose out of a "Special Condition." (Doc. 1, p. 4, par. 25-26) In its amended answer, Symetra stated only that it informed Adams that some conditions result in a benefit duration of 12 months. (Doc. 108, p. 5, par. 25) It did not affirmatively state whether the Special Condition applied to Adams or not. In his Request for Admissions No. 20, Adams asked Symetra to admit that his disability was not a "Special Condition" and "thus was not subject to the 12-month limitation on benefits." (Doc. 186-2, p. 6) In its response, Symetra stated that, "Plaintiff claimed he was disabled as the result of low back pain, which is subject to the Policy's 12-month limitation on benefits." *Id*. This admission seems to indicate that Adams's disability *is* subject to the "Special Condition" assuming he is, in fact, disabled, which Symetra apparently does not concede. *See also* (Doc. 59, p. 3) ("Symetra determined that Plaintiff was not disabled under the terms of the Policy – even during the time period for which Symetra had previously paid him benefits (October 9, 2017 to October 8, 2018)"). It is possible

that Symetra intends to preserve the issue for future use. For example, Symetra may argue that Adams is not disabled at all, but if he is, then his disability is subject to the Special Condition.

The record to date is unclear as to whether the Special Condition applies to Adams's claim. Absent an affirmative, unambiguous, admissible statement from Symetra that the "Special Condition" does not apply to Adams's disability or his benefits, the court finds that RFP 10 is material and discoverable.

Symetra further argues that producing the Special Condition files would be too burdensome. (Doc. 175, p. 13) According to Symetra, there are 67 claims responsive to this request, collecting those claims would take 268 hours, and redacting those documents "would require Symetra to comb through approximately 120,000 pages. (Doc. 175, pp. 13-14). It asserts that "[t]he cost to Symetra both in terms of time and money far outweighs any limited relevance (if any) these files might have."

Symetra does not, however, explain why it believes it would take 268 hours to collect 67 claims or why it believes those claims contain 120,000 pages. Without specifics, the court is unable to properly evaluate Symetra's objection. *See also Kravetz v. Paul Revere Life Ins. Co.*, 2009 WL 77649, *1 (D.Ariz.2009) ("The privacy and HIPAA objection can be dealt with by having plaintiff's counsel review the documents, copy only those that are desired, and protect them from disclosure under Rule 26(c)(1)(G), Fed.R.Civ.P.").

Requests for Production (RFPs) 13 and 14, Disability Analysis

In RFP 13, Adams seeks documents "that reflect the total amount of money paid by Symetra to MLS Group of Companies, Vikram Garg, M.D., and Frank Polanco, M.D." (Doc. 150-3, p. 18) In RFP 14, he seeks documents "that reflect the total number of long-term disability claims that were referred to MLS Group of Companies, Vikram Garg, M.D. and Frank Polanco, M.D." (Doc. 150-3, p. 19) MLS provides insurance companies with medical experts to evaluate disability claims. When Adams first applied for benefits, Symetra hired MLS to review the medical record and assess his claim. (Doc. 179, p. 7) MLS doctors Frank Polanco and Vikram Garg reviewed the medical record and offered their opinions of Adams's ability to

work. (Doc. 179, p. 10) Symetra's ultimate denial of benefits was based primarily on the reports authored by Polanco and Garg. (Doc. 179, pp. 11-12) Adams suspects that the MLS doctors offered medical opinions that were less than completely objective.

The documents that Adams seeks may show that MLS and/or Polanco and Garg have a financial motivation to provide reports that favor the insurer, their client. This would be some evidence that the MLS reports are less than completely objective. Moreover, the documents may provide evidence that Symetra is aware of that financial motivation and exploits it to obtain favorable reports. The court finds that RFPs 13 and 14 are relevant and discoverable.

Symetra argues that it would be misleading for the jury to learn of the amount of money it paid to MLS, because the doctors probably are ignorant of the amount. (Doc. 175, p. 14) That is possible; the documents that Adams seeks may not be admissible at trial. That, however, is not the issue here. *See* Fed.R.Civ.P. 26(b)(1) ("Information within this scope of discovery need not be admissible in evidence to be discoverable.").

Requests for Production (RFPs) 15-21, Policy Application Documents

In RFPs 15-21, Adams seeks documents that Symetra sent and received from the state Departments of Insurance during the approval process for the Disability Insurance Policy eventually issued to The Agents Association. (Doc. 150, p. 17) He also seeks information concerning the "actuarial pricing assumptions" and "loss ratio assumptions and/or expectations" that relate to the Policy. (Doc. 150-3, pp. 22-23)

Adams argues these documents will reveal how the policy was intended to be interpreted, including the "Special Condition" limitation. Moreover, he maintains that they are important evidence as to whether the Policy is governed by ERISA. *See Sarraf v. Standard Ins. Co.*, 102 F.3d 991, 993 (9th Cir. 1996) ("[T]he certificate and summary plan description characterized the LTD plan as an ERISA plan, evidencing OCEA's intent to create an ERISA plan."). The court finds that RFPs 15-21 are relevant and discoverable.

IT IS ORDERED that the plaintiff's motion, filed on December 13, 2019, to compel discovery from the defendant, Symetra, is GRANTED in PART. (Doc. 150) Symetra will produce, within thirty days from the date this order is issued, documents requested in Adams's Requests for Production 1-6, 10, 13-21 subject to any qualifications expressed in this opinion.

Adams stated in his motion that RFP 11 is also at issue. (Doc. 150, p. 1) He did not, however, include any argument concerning that Request. Moreover , it does not appear in his Rule 37.1 statement in support of his motion. *See* LRCiv 37.1

DATED this 26th day of March, 2020.



Leslie A. Bowman
United States Magistrate Judge